UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LAURA DELUCA,<br>    Plaintiff,<br><br>v.<br><br>RELIANT MEDICAL GROUP, et al.<br>    Defendants. | CIVIL ACTION<br>NO. 18-40028-TSH |

## REPORT AND RECOMMENDATION

### October 4, 2018

  This matter comes before the Court on three separate motions to dismiss filed by all defendants in this case. (Docket ## 14, 16, 18). On March 19, 2018, UMass Memorial Medical Group and Dr. Wahid Wassaf filed a motion to dismiss. (Docket # 14). Reliant Medical Group, Dr. Thad Schilling, Dr. Asma Islan, and Attorney Jessica Viglotti filed a motion to dismiss on March 22, 2018. (Docket # 16). On March 26, 2018, Massachusetts General Hospital and Dr. William Brugge filed a motion to dismiss for lack of subject matter jurisdiction. (Docket # 18). Plaintiff Deluca filed an opposition to the motions to dismiss on April 17, 2018. (Docket # 19). On April 26, 2018, District Judge Hillman entered an order referring the case to this Court for report and recommendations. (Docket # 21). For the reasons that follow, the Court recommends that all three motions to dismiss be granted.

  I.  BACKGROUND

  On March 2, 2018, Plaintiff Deluca filed a complaint alleging malpractice, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Defendants Reliant Medical Group; Thad Schilling, M.D.; Jessica Vigliotti, Esq.; Asma Islam,

1

MD; UMass Memorial Medical Group; Wahid Wassaf, MD; Massachusetts General Hospital; William Brugge, MD; and John and Jane Does 1-100.  (Docket # 3, ¶ 1).  Deluca's claims arise from her medical care by the named Defendants.

Deluca alleges that on or about May 10, 2017, Dr. Wassaf performed an endoscopic ultrasound on her.  (Id. at ¶ 17).  After the procedure, Dr. Wassaf called Deluca to inform her that he had diagnosed her with chronic pancreatitis.  (Id.).  On May 18, Deluca contends that she went to St. Vincent's Hospital emergency room for an attack of acute pancreatitis.  (Id. at ¶ 18).  She claims that she contacted Dr. Wassaf and informed him that she was at the emergency room experiencing pain and that Dr. Wassaf told her that she was constipated, despite her insistence that she was not having difficulty with bowel movements.  (Id.).  On May 19, Dr. Wassaf ordered an x-ray of Deluca's abdomen.  (Id. at ¶ 19.)  Deluca then claims that she contacted Dr. Wassaf's office on the advice of the emergency room doctor to be seen concerning her acute attack the previous day.  (Id.).  Deluca alleges that she was told to use a diuretic and that Dr. Wassaf would call her the next day once he had a chance to review the x-ray.  (Id.).  Deluca claims that she was not contacted by Dr. Wassaf the following day.  (Id. at ¶ 20).  She contacted UMass Memorial Medical Group and was advised to take the medicine provided to her at the emergency room on May 18 and to contact Dr. Wassaf's office the following Monday.  (Id.).  Deluca also called the office of a new gastroenterologist, Dr. Islam.  (Id.).

Deluca contends that on May 21, 2017, she awoke to severe pain and returned to the emergency room at St. Vincent's Hospital where she was denied admittance because she had a "chronic condition" and that her care should be provided by her gastrointestinal doctor rather than the emergency room.  (Id. at ¶ 21).  Deluca states that she called Dr. Wassaf's office numerous times on May 22 and that none of her calls were returned until her insurance carrier

2

called the office. (Id. at ¶ 22). Over the phone on the evening of May 22, Dr. Wassaf told Deluca that she was not constipated and referred her to "MRCP" for a scan over a week later. (Id.).

Deluca scheduled an appointment with Dr. Islam on May 23, 2017 and was seen by a nurse practitioner in that office on May 24. (Id. at ¶ 23). According to Deluca, the nurse practitioner ("NP") prescribed 20 doses of Oxycodone to Deluca. (Id.). On May 25, Deluca obtained a patient advocate through her health insurance carrier. (Id. at ¶ 24). Deluca claims that she requested additional Oxycodone from Dr. Islam's NP on June 1, 2017 and her request was denied. (Id.).

Deluca met with a new gastroenterologist on June 6, 2017, Dr. Brugge at Massachusetts General Hospital. (Id. at ¶ 26). Deluca contends that he did not take her reports of pain seriously, that he was distracted throughout their meeting and repeatedly took phone calls, and that he refused to prescribe opioid pain medication, instead advising her to comply with a low-fat diet. (Id.) Dr. Brugge told Deluca that he would consult with Dr. Islam. (Id.).

Deluca reports that she met with Dr. Kim, yet another gastroenterologist, on June 11, 2017 at UMass Memorial Medical Group. (Id. at ¶ 27). Dr. Kim prescribed a different medication, but Plaintiff alleges that there was no improvement after one week. (Id.). Deluca states that Dr. Kim also prescribed an antibiotic which provided Deluca with relief from symptoms that she had been reporting for two years. (Id.). Dr. Kim refused to prescribe pain medication, instead directing Deluca to make an appointment at a pain clinic. (Id.). Deluca claims that she called pain clinics all over the state during the following weeks and was advised that they are no longer taking patients in need of opioid medication. (Id. at ¶ 28).

On July 25, 2017, Deluca met with Dr. Islam in person for the first time. (Id. at ¶ 29). At the meeting, Deluca claims that Dr. Islam told her that the office did not receive records sent by Dr. Wassaf. (Id.). Deluca alleges that she had confirmation that the records were faxed to Dr. Wassaf's office on June 11, 2017. (Id.).

On September 5, 2017, Deluca contends that her health insurance carrier directed her to a pain clinic at Beth Israel where Deluca saw Dr. Freedman, another gastroenterologist, who ordered a new endoscopic ultrasound with secretions. (Id. at ¶ 31). According to Deluca, the endoscopic ultrasound with secretions was completed on September 20. (Id. at ¶ 32). Deluca alleges that the bicarbonate reading was 69 where it had previously been 78. (Id.). She claims that the total loss of organ function was eleven percent since May 18, 2017. (Id.). Accordingly, Deluca states that Dr. Freedman changed her medication from creon to viscose and prescribed one month of Oxycodone for breakthrough pain in addition to Gabapentin for thrice daily use, advising that Deluca's primary care physician should provide pain medication. (Id.).

As of September 20, 2017, Deluca contends that Dr. Islam's office continued to report that it had not received records from Dr. Wassaf's office and additionally reported that it had not received recommendations from Dr. Freedman's office. (Id. at ¶¶ 33, 34). Deluca contends that Dr. Islam would not prescribe the recommended medication until Dr. Freedman's staff called Dr. Islam's office. (Id. at ¶ 34). Deluca asserts that her symptoms were not taken seriously at the Beth Israel Pain Clinic and that she had difficulty in getting Dr. Islam's office to refer her to the Baystate Pain Center. (Id. at ¶¶ 35-40). On November 7, 2017, Deluca alleges that Dr. Islam refused to provide care for Deluca despite her reports of severe pain and great difficulty eating. (Id. at ¶ 41). Deluca claims that she was rejected from the Baystate Pain Center on November 9, 2017 because she lived outside of the service area. (Id. at ¶ 42).

On November 13, 2017, Deluca had an appointment at the Peabody Pain Clinic. (Id. at ¶ 43). Deluca claims that she was advised that they would not provide her with opioid medications. (Id.). Deluca alleges that she saw a note from Dr. Brugge at Massachusetts General Hospital stating that Deluca had developed chronic pancreatitis as a result of long-term narcotic use and advised that "no narcotics be given to patient." (Id.). That same day, Deluca states that she went to Dr. Islam's office and requested all of her patient records with all test results and recommendations regarding her care. (Id. at ¶ 44).

Deluca alleges that she spoke with Attorney Vigliotti, Senior Manager for Risk Management for Defendant Reliant Medical Group on November 13, 2017 concerning the note by Dr. Brugge and what Deluca considered to be deficient care on the part of Dr. Islam. (Id. at ¶ 45). Deluca contends that Attorney Vigliotti stated that she would investigate. (Id.)

Deluca claims that when she called Dr. Islam's office on November 14, 2017 to follow up on her prescriptions, she was told that Dr. Islam no longer worked there and that NP Kelly Manchester would be handling her care. (Id. at ¶ 46). Deluca reports that when she called again for NP Manchester, she was told that NP Manchester had rejected her as a patient. (Id.). Deluca alleges that she then learned that Dr. Islam was still working at that office. (Id.).

On November 14, 2017, Deluca asserts that she sent Reliant Medical Group a letter complaining of deficient care and requesting all of her medical records. (Id. at ¶ 47). Deluca attests that this was her seventh request for her medical records. (Id.) Deluca claims that she received a letter from Reliant Medical Group on November 17, 2017, releasing her as a patient. (Id. at ¶ 48).

On December 1, 2017, Deluca went to Reliant Medical Group to have her vitals checked because of difficulty eating, and bruising. (Id. at ¶ 49). Dr. Thomas Kline ordered bloodwork.

5

(Id.).  Deluca claims that she was told that the blood was lost by the lab.  (Id. at ¶ 50).  Deluca claims that blood was drawn a second time, but that the lab refused to test it.  (Id. at ¶ 51).

Deluca received two years' worth of medical records from Dr. Islam's office on December 9, 2017.  (Id. at ¶ 52).  Deluca complains that she should have received the entirety of her records and that the records she did receive had been altered and contained false statements.  (Id.).

Deluca alleges that on December 15, 2017, she was admitted to Beth Israel Deaconess Hospital with an acute pancreatic attack.  (Id. at ¶ 53).  She was released from the hospital on December 19, 2017.  (Id. at ¶ 54).  Deluca reports that she testified at the Statehouse on Bills H.1181 and S.1183, "An Act Requiring Pain Assessment & Management at Healthcare Facilities," concerning her experience.  (Id.).

II.     STANDARD

In reviewing a Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must "construe the [c]omplaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences."  Hajdusek v. United States, 895 F.3d 146, 148, (1st Cir. 2018) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  Nonetheless, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence."  Jonson v. FDIC, 877 F.3d 52, 56 (1st Cir. 2017) (citing Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993)).  Therefore, "an order granting a motion to dismiss at the pleading stage is appropriate only when the facts adumbrated in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction."  Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).

III.     ANALYSIS

Defendants move the Court to dismiss Deluca's complaint for lack of subject matter jurisdiction. Federal district courts may exercise jurisdiction over civil actions arising under federal laws, and over certain actions in which the parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.  Diversity of citizenship exists "when there is complete diversity, that is, when no plaintiff is a citizen of the same state as any defendant." Gabriel v. Preble, 396 F.3d 10, 13 (1st Cir. 2005) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806); Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 139 (1st Cir. 2004)).

In this case, Deluca has asserted claims of malpractice, negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress.  (Docket # 3, ¶ 1). Malpractice actions may be asserted pursuant to M.G.L. c. 231, § 60B-L.  Deluca cites to Massachusetts caselaw to support her claims for negligence (Docket # 3, ¶ 62), negligent infliction of emotional distress (Id. at ¶ 67), and intentional infliction of emotional distress (Id. at ¶ 73).  All of Deluca's claims are asserted pursuant to the laws of Massachusetts.  Deluca's complaint does not raise any questions of federal law.

In her response to Defendants' motions to dismiss, Deluca claims that her case poses a question of federal law because she asserts that the Defendants have violated the Health Information Portability and Accountability Act, (HIPAA, Pub.L. 104–191, 110 Stat. 1936, enacted August 21, 1996).  There is no claim for relief from a HIPAA violation to be found in Deluca's complaint.  (Docket # 3).  Furthermore, even were the Court to assume such a claim based upon the allegations found in Plaintiff's complaint, there is no federal private cause of action that arises from a violation of HIPAA.  Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009).

Violators of the act may be subject to civil and criminal penalties; however, the Secretary of Health and Human Services is exclusively authorized to enforce HIPAA. Wade v. United States, No. CV 11-10051-FDS, 2016 WL 8716219, at *3 (D. Mass. Oct. 14, 2016); Rosado-Montes v. United States, 8 F. Supp. 3d 55, 62 (D.P.R. 2014). Because HIPAA does not provide Deluca with a private right of action, Deluca cannot use an assertion of her rights thereunder as grounds for federal question jurisdiction. The Court does not have subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

Deluca's claims are brought against Defendants Reliant Medical Group; Thad Schilling, M.D.; Jessica Vigliotti, Esq.; Asma Islam, MD; UMass Memorial Medical Group; Wahid Wassaf, MD; Massachusetts General Hospital; William Brugge, MD; John and Jane Does 1-100. (Docket # 3, ¶ 1). According to Deluca's complaint, all parties are citizens of Massachusetts. (Id. ¶¶ 6-14). The Court does not have diversity jurisdiction over this case because all parties are citizens of Massachusetts. See 28 U.S.C. § 1332. Because the Court does not have subject matter jurisdiction over this case, the Court allows Defendants' motions to dismiss for lack of jurisdiction be GRANTED.

IV.  CONCLUSION

For the foregoing reasons, I recommend that the motions to dismiss (Docket ## 14, 16, 18) be ALLOWED.

/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE